IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DANNY AUCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-4236-CV-C-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in 1959 and has an eleventh grade education. He has prior work experience as a forger, painter, and construction contractor. He protectively filed his application for benefits under Title II of the Social Security Act on January 6, 2005, alleging a disability onset date of June 15, 2001. Plaintiff alleges he is disabled due to a degenerative disc in his lower back. Plaintiff's claim was denied initially on May 16, 2005, and there was no review at the reconsideration level. In a decision on August 14, 2007, after a hearing, the Administrative Law Judge ("ALJ") found Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision. On September 21, 2007, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

Plaintiff's medical records begin on March 14, 2003, when Plaintiff was seen by

Carol Costaine, RN, MSN, CS, FNP, with complaints of low back pain. (Tr. 148-49). On October 27, 2003, Plaintiff again saw Costaine for back pain with radiculopathy. Costaine was unable to reproduce Plaintiff's pain. (Tr. 144).

On October 29, 2003, Plaintiff was evaluated at Columbia Orthopaedic Group. He complained of constant dull, aching pain in the low back on the left side with numbness down between the back and outside of the left thigh. He reported that he was a self-employed contractor building decks and doing roofing and siding. Plaintiff stated that he had experienced a job related back injury in 1993 or 1994, and that he was doing well until six weeks ago when he helped another man set roof trusses. He stated that his recent sessions of physical therapy had resulted in less numbness in his left leg, but that after a day of working he continues to experience increasing numbness. He also reported that sitting or bending for long periods of time worsens his symptoms. He stated that laying down, changing positions, and taking Motrin provide some relief. (Tr. 97).

Examination revealed a normal range of motion of his lumbar spine without pain, numbness, tingling, or weakness. He had mild to moderate pain and tenderness upon palpitation in the L5-S1 region. X-rays showed evidence of degenerative disc disease. The impressions were chronic S1 nerve root radiculopathy possibly secondary to disc protrusion, chronic history of cigarette smoking, and exogenous obesity. Plaintiff was told to continue with physical therapy and continue taking Motrin 800 mg. He was also encourage to quit smoking and lose weight to lessen his back pain. (Tr. 98-100).

On May 2, 2005, at the request of Social Security Disability Determinations, Plaintiff was examined by Dr. Jennifer Clark. He complained of ongoing dull pain and numbness in his left leg and left foot. He stated that his pain ranged from a 4 to a 10+ on a 10-point scale. He still smoked a pack-and-a-half a day. He stated that he exercised regularly. He reported the worst pain occurred when bending, lifting, sitting, and standing. He reported difficulty lifting fifty pounds, bending, kneeling, squatting, going up and down stairs, getting up from a chair and walking on uneven ground. He denied difficulty running, lifting 25 pounds, vacuuming, getting groceries, driving, doing overhead work, grooming, and dressing. He experienced pain when standing for more

than sixty to ninety minutes, but that it was "not so bad with sitting." (Tr. 109-111).

A physical exam revealed the only area of tenderness was to the right of the second sacral segment, with full range of motion of the lumbar spine. Complaints of pain occurred with extremes of extension and extremes of flexion. He was able to get up and down with ease. Dr. Clark observed that Plaintiff's hands and knees were heavily calloused and he had a "bone-crushing grip." Dr. Clark's impressions were chronic low back pain and left sural neuropathy, obesity, and nicotine addiction. (Tr. 111-12). She completed a residual functional capacity assessment in which she opined that Plaintiff could frequently lift 50 pounds and occasionally lift 100 pounds; that he could stand and/or walk for 6 to 8 hours out of an 8-hour day and sit for at least 6 hours out of an 8-hour day. Dr. Clark opined that Plaintiff had no postural limitations and could sustain a 40-hour workweek. (Tr. 139-140).

On July 13, 2005, Plaintiff was evaluated by Dr. Betsy Armstrong with complaints of back pain with radiation into the left leg. He reported that he hurt it "years and years ago" and that "[h]e probably just overdid it here lately helping his sister build a house." He stated that his lumbar region aches all the time. Her assessment was lumbosacral sprain with radiation into the left leg. Plaintiff underwent an injection of Toradol and Solu-Medrol. He was also given Flexeril for muscle spasms and Vicoprofen for pain. (Tr. 117).

On March 21, 2007, Randal Trecha, M.D., from the Columbia Orthopaedic Group, examined Plaintiff on a referral from Dr. Armstrong. Physical examination revealed no focal tenderness, 95% of expected flexion with decreased ability to extend, and normal strength bilaterally in all muscle groups. The MRI revealed a bulging disc at L4-5 and a central disc protrusion at L5-S1. Dr. Trecha's impression was degenerative disease and a possible slipped disc along the spinal cord. He recommended an over-the-counter ibuprofen and an epidural steroid injection. Plaintiff declined the injection. Dr. Trecha also advised Plaintiff to get involved in a low impact exercise program, to stop smoking, and to lose weight. (Tr. 102-103). Plaintiff cancelled two scheduled appointments in May 2007. On June 1, 2007, he went to his appointment and agreed to an epidural steroid injection. (Tr. 106-107).

3

Plaintiff testified at the hearing before the ALJ on March 14, 2007. He stated that he was unable to work because his back would not allow him to stay in one position for very long at a time. He stated that he spends two-thirds of his day in a recliner. Plaintiff also testified that he can only lift five pounds without causing significant back pain later in the day. On cross-examination by the ALJ, Plaintiff admitted he could lift more than five pounds. (Tr. 180). He stated that he takes a muscle relaxer and pain medicine. Plaintiff testified that he had gained 120 pounds since he had hurt his back. He stated that he could drive a car, but not for very long. He stated that his pain causes him to have trouble sleeping. He is able to do household chores, including the dishes, vacuuming–but only one room at a time, grocery shopping, cooking, raking leaves, and mowing with a riding lawn mower. Plaintiff agreed that, while alleging disability onset in 2001, he had earned $17,464 in 2004, working as a construction contractor. (Tr. 169-181).

Based on the testimony the ALJ found credible, he asked a Vocational Expert ("VE") to consider a hypothetical person with the ability to do the full range of light work with the following limitations due to back pain and weight: only occasional bending; no crawling; kneeling or squatting; no extremes of hot or cold, and controlled humidity; no foot controls; work must be on a level surface; no use of any vibrating tools; no excessive walking; no climbing ladders, scaffolds, or ropes; and must have the option to sit for 40 minutes and stand for 20 minutes during each and every hour of the workday. The VE testified that a person with such limitations would be unable to perform Plaintiff's past work as a forger, painter, or construction contractor. However, she stated the such a person could work as a bench assembler, production assembler, and collator operator. (Tr. 186-194).

The ALJ agreed to leave the record open to receive additional medical records. On June 13, 2007–after the hearing but before the ALJ rendered his opinion–Plaintiff underwent surgery to repair a ventral hernia. (Tr. 87). Plaintiff submitted these records for inclusion in the record.

4

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

The ALJ found that Plaintiff was not disabled. He found that Plaintiff had the severe impairments of degenerative disc disease, chronic low back pain with radiculopathy, and obesity. Plaintiff did not have any impairment or combination of impairments that met or equaled any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing of Impairments. The ALJ found that Plaintiff had the residual functional capacity ("RFC") for light work, with limitations due to back pain and weight as stated in his hypothetical to the VE. (Tr. 15).

The ALJ found Plaintiff's testimony regarding the severity of his limitations were not entirely credible. He found that Plaintiff could not perform his past relevant work, but that he could perform other work that exists in significant numbers in the economy, specifically the jobs of bench assembler, production assembler, and collator operator.

Plaintiff does not challenge any specific finding of the ALJ, including his credibility finding. Plaintiff's only challenge to the ALJ's decision is the ALJ's alleged failure to consider medical records submitted after the hearing, despite agreeing to hold the record open. Accordingly, the Court will address only this issue.

The only records submitted subsequent to the hearing pertained to Plaintiff's

5

laparoscopic ventral hernia repair on June 13, 2007 and associated testing.  According to these records, Plaintiff had an exploratory laparotomy in childhood after ingesting lead paint.  He had a large midline incision that had developed a noticeable mass over several months.  Plaintiff described some mild, pressure-related discomfort that he rated as a one on a ten point scale.  (Tr. 78-94).  The procedure apparently was successful; there are no records of any complications.

At the hearing before the ALJ, approximately three months before the ventral hernia repair, Plaintiff did not mention that he had a hernia, or any pain associated with one, even though the medical records state that Plaintiff had noticed the mass over the last several months.  (Tr. 80).  Furthermore, the procedure was described as "elective."  (Tr. 87).  The reports associated with Plaintiff's ventral hernia in no way suggest it could have caused Plaintiff any significant functional limitation, nor would it have affected his RFC.  Therefore, the evidence would not have changed the ALJ's decision.  The ALJ is not required to discuss every piece of evidence submitted.  See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).  Furthermore, even if the ALJ did not consider this evidence in reaching his decision, the lapse did not affect the outcome.

## III.  CONCLUSION

The Commissioner's decision is supported by substantial evidence in the record as a whole, so his decision denying benefits is affirmed.

IT IS SO ORDERED.

DATE: August 25, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT